BUNCH et al. v. SMITH et al.

(*Nashville.*   December Term, 1905.)

1.  **DEMURRER.**  Not acted on in lower court cannot be assigned as error in supreme court.

An assignment of error in the supreme court that the lower court improperly overruled a demurrer to the bill cannot be sustained, when it does not appear from the record that the demurrer was ever acted upon in the court below.  (*Post, p.* 209.)

Case cited an approved: M. & O. R. R. Co. v. Ridley, 114 Tenn., 727.

2.  **BANKRUPTCY.**  Trustee entitled to property of bankrupt fraudulently conveyed, notwithstanding discharge.  Four months' limitation does not apply.

The granting of a discharge in bankruptcy under the federal bankrupt act of 1898 is in no way dependent upon a settlement of the bankrupt's estate; and all property transferred by the bankrupt in fraud of his creditors vests in the trustee, although such transfer was made more than four months before the petition in bankruptcy was filed.  (*Post, pp.* 212-216.)

Act of congress cited and construed: ' Bankrupt Act July 1, 1898, sec. 1, subsec. 12, and sec. 67e.

Cases cited and distinguished:. Morris v. Creed, 11 Heisk., 155; Hudson v. Bigham, 12 Heisk., 59.

3.  **SAME.**  Trustee proper party to sue for property fraudulently conveyed by bankrupt.  May intervene in suit in State court.

The trustee in bankruptcy is the proper party to bring suit to recover property fraudulently transferred by the bankrupt, and such suit may be brought in the State court, and to that end he may intervene in a pending suit brought by a judgment creditor to set aside a fraudulent conveyance of property made by the bankrupt.  (*Post, pp.* 216-218.)

Bunch v. Smith.

Act of congress cited and construed: Bankrupt Act July 1, 1898, sec. 70e.

Cases cited and approved: Glenny v. Langdon, 98 U. S., 20; Trimble v. Woodhead, 102 U. S., 647; Claflin v. Houseman, 93 U. S., 131; Barton v. Geiler, 3 Lea, 297.

**4. SAME. Trustee may be reinstated by referee when improperly discharged.**

A referee in bankruptcy has the right to reinstate or reappoint a trustee who has been inadvertently or improperly discharged. (*Post, pp.* 218, 219.)

Act of congress cited and construed: Bankrupt Act of July 1, 1898, sec. 2, subsec. 8.

**5. SAME. Suit brought by creditors of bankrupt may be revived in name of trustee, when.**

Where a petition in bankruptcy is filed and the bankrupt receives a final discharge pending a suit brought in the State court by creditors of the bankrupt to set aside a fraudulent conveyance made by him, it is proper for the State court to revive the suit in the name of the trustee upon a petition filed by him for that purpose. (*Post, pp.* 218, 219.)

**6. SAME. Trustee entitled to entire proceeds of sale.**

In the case stated in the next preceding headnote, it is not error to decree that the entire proceeds of the sale of the property be turned over to the trustee, for the benefit of all the creditors of the bankrupt's estate, instead of only a sufficient amounts to satisfy the claims of the original complaints. (*Post, pp.* 219, 220.)

**7. COSTS. May be taxed to defendant and sureties on appeal bond in suit to set aside fraudulent conveyance.**

In a successful action to set aside a fraudulent conveyance of property made by a debtor, it is not error to adjudge that the defendant and the sureties on his appeal bond are personally liable for the costs of the cause, instead of ordering them paid out of the proceeds of the sale of the property. (*Post, p.* 220.)

## FROM GILES.

Appeal from the Chancery Court of Giles County.—
WALTER S. BEARDEN, Chancellor.

E. E. ESLICK, R. H. MCLAURIN and H. T. ALLEN, for
Bunch et al., and Akers, trustee.

STEWART WILKES, W. B. SMITHSON and M. ESLICK,
JR., for Smith et al.

MR. JUSTICE MCALISTER delivered the opinion of the
Court.

Complainants, who are judgment creditors of the de-
fendant M. Alice Smith, filed this bill for the purpose of
setting aside an alleged fraudulent conveyance made by
the said M. Alice Smith to her sister, Lizzie Smith, and
also for the purpose of annulling a decree of the chancery
court of Giles county in which it was decreed that a
three-eighths undivided interest of M. Alice Smith in the
house and lot in question was the property of her sister,
Lizzie Smith, by virtue of the conveyance already men-
tioned.

The property sought to be reached by complainants
is an undivided interest in a house and lot situated

in Pulaski, Tennessee, and is fully described in the pleadings. In accordance with the prayer of the bill, writs of attachment were issued, served, and levied on the property mentioned. The bill herein was filed April 5, 1902, and on the 22d of May, 1902, the defendant M. Alice Smith filed her petition in the federal court at Nashville to be discharged from her debts and liabilities as provided by the bankrupt act passed July 1, 1898, 30 Stat., 544, c. 541 (U. S. Comp. St. 1901, p. 3418.) A. W. Akers was appointed trustee in bankruptcy to said M. Alice Smith, and thereafter filed a petition herein seeking to become a party to this cause and to be subrogated to the rights of complainants, and to be permitted to prosecute the case for the benefit of all the creditors of said M. Alice Smith.

On the 2d of August, 1902, said trustee in bankruptcy obtained leave of the chancellor to file an amended and supplemental bill in said cause, subject, however, to all defenses on the part of defendants. The substance of the amended and supplemental bill was that it set out the original proceedings and alleged that the conveyance by M. Alice Smith of her three-eighths undivided interest in the house and lot to her sister was fraudulent and void as to creditors, and prayed that said conveyance be set aside and that said interest be held to pay the claims of creditors of said M. Alice.

This bill was afterwards amended so as to show that said M. Alice Smith was granted a discharge in bankruptcy on August 5, 1902.

Bunch v. Smith.

Defendants demurred to the original, amended, and supplemental bills, assigning, among other grounds, that the chancery court was without jurisdiction in the premises; that by filing their claims in the bankruptcy proceedings complainants waived any lien or liens they may have acquired by the filing of their bill and levying of their attachments; that any and all liens complainants may have acquired by the filing of their bill and levying of their attachment were vacated by the filing of the petition in bankruptcy by M. Alice Smith under the bankruptcy law of 1898, because said liens attached within four months of the date said petition in bankruptcy was filed; that the deed of M. Alice Smith to Lizzie Smith, dated December 24, 1901, conveying her three-eighths interest in the house and lot, was executed, delivered, and registered more than four months prior to the filing of the petition in bankruptcy of M. Alice Smith, and could not be set aside under the bankrupt act of 1898; that on the 5th of August, 1902, M. Alice Smith was granted a discharge in bankruptcy, releasing her from all liability for all debts she owed at the time of filing her petition which are released by her discharge in bankruptcy, and that all the debts of complainants and all debts mentioned in the bill and amended bill are such as are released by the discharge in bankruptcy; that a trustee in bankruptcy could not be substituted in a State court to the rights of attaching creditors; that, if such subrogation could be made, it could only be done by an original bill in the nature of a supple-

mental bill, and not in the way attempted in this cause; that Akers does not show that he is acting with the approval of the court appointing him.

An answer was also filed by the defendants, and under and by permission of the chancellor defendants were allowed to incorporate their demurrer in their answers and to rely upon the same at the hearing. Subsequently defendants withdrew their answer, and it was agreed that the action of the chancellor on the demurrer should be final. On the hearing the chancellor overruled the demurrer and decreed full relief to the complainants. On appeal the decree of the chancellor was affirmed by the court of chancery appeals, but on appeal this court reversed both decrees, as follows: "The decree of the court of chancery appeals is reversed. The order of reversal will show that the case should be determined on answer to supplemental bill of Akers, trustee, and that equity as between the parties requires that the case should not go off upon demurrer. Costs of appeal are divided between parties." .

After the remandment of the case on the 16th of July, 1904, defendants answered the amended and supplemental bills filed by the trustee in bankruptcy April 17, 1904, wherein they denied that the conveyance of M. Alice Smith to her codefendant Lizzie Smith was fraudulent, but averred that it was based upon a valuable and sufficient consideration. M. Alice Smith also averred that August 12, 1902, she was granted a full and final discharge in bankruptcy from all debts and liabilities

that she then owed or that she owed at the time of filing
her petition in bankruptcy, and that, the debts of com-
plainants being such debts as were dischargeable under
the bankrupt law, she was released therefrom by her
discharge in bankruptcy, and hence as complainants
were parties to said bankruptcy proceedings they are
estopped to attempt to enforce the collection of their
claims in this suit.

It was further averred that the original bill was
filed within four months next prior to the filing of the
petition of M. Alice Smith in bankruptcy, and that the
deed of M. Alice to her sister, Lizzie Smith, was executed,
delivered, and registered more than four months prior
to the filing of her petition in bankruptcy, and that under
the bankruptcy law her deed must stand and cannot be
impeached, that liens, if any were created by the filing
of the original bill and levy and attachment thereunder,
were discharged by the filing of her petition in bank-
ruptcy, and that, the federal court having assumed juris-
diction of the matter, its decree discharging her is final
and conclusive upon complainants as well as Akers,
trustee, and that complainants cannot now do through
said Akers, trustee, what they could not do themselves.
It appears that on October 8, 1904, Akers, trustee, was
permitted to file a petition in the nature of an amended
and supplemental bill in this cause, wherein it is stated
that said Akers, as trustee, was discharged by the referee
in bankruptcy on the supposition that his trust with re-
spect to the estate of M. Alice Smith had been closed,

which was a mistake, and that upon application to said referee in bankruptcy he had been reinstated as trustee in bankruptcy of said M. Alice Smith.

Defendants moved to dismiss said petition, which was overruled. Defendants thereupon demurred to the petition, which demurrer was also overruled by the chancellor. Defendants then filed an elaborate answer to the petition to revive. Proof was taken, and on the hearing the chancellor again decreed that the conveyance from M. Alice Smith to her codefendant and sister, Lizzie Smith, was fraudulent in law and fact, and further adjudged that the decree in the case of *M. Alice Smith et al.* v. *Buckner Smith et al.,* wherein it was adjudged that M. Alice Smith had no interest in the house and lot in controversy, was fraudulent in law and fact. The chancellor thereupon set aside the deed from M. Alice Smith to her sister, Lizzie Smith, and also the decree in the case aforesaid in so far as it adjudged that M. Alice Smith had no interest in the house and lot in question.

The chancellor further decreed that Akers, trustee in bankruptcy of M. Alice Smith, had the right to subject the three-eighths interest in the house and lot in question to the payment of the debts provable against the estate of said M. Alice Smith, and that a lien was created upon this property by the filing of the bill and amended and supplemental bills in this cause. On appeal the court of chancery appeals affirmed the decree of the chancellor. The cause is again before this court on the appeal of the defendants. It may be stated that

Bunch v. Smith.

many questions are now made which were embraced
in the demurrer which was before this court on the
original hearing; but we do not find in the record that
this demurrer was acted on by the chancellor on the
second hearing. It cannot, therefore, be noticed by us.
*M. & O. R. R. Co.* v. *Ridley,* 114 Tenn., 727, 86 S. W.,
606.

On the main question of fact presented, viz., whether
the conveyance from M. Alice Smith of her three-eighths
undivided interest in said property to her sister, Lizzie
Smith, was fraudulent, the court of chancery appeals
finds as follows: "After an examination of the direct
evidence in this case, read in the light of and in connec-
tion with the averments of the bill of appellants and
their mother against their father and others, heretofore
referred to and quoted from, and the evidence given by
appellants in that case made a part of the record in this
case, we find it impossible to avoid coming to the con-
clusion that the deed of M. Alice Smith to her sister,
Lizzie Smith, conveying her three-eighths interest in
the house and lot in question; was fraudulent, both in
law and fact, and we so find as a fact. We need not
detail the evidence in the record on which we base this
finding. It is only necessary to say that the deed of con-
veyance recites a consideration in hand paid of $800,
when manifestly under the weight of the proof nothing
at all was paid at the time, and the fact is, under the
proof, the sister had nothing at all with which to pay

116 Tenn.—14

for the interest of her sister. In short, under the proof,. the conveyance was voluntary, without consideration,. and made when creditors of M. Alice Smith were press- ing and reducing their claims to judgment."

As already stated, one of the declared objects of the present bill was to annul a certain decree of the chancery court of Giles county, wherein it was adjudged that the three-eighths undivided interest of M. Alice Smith in the house and lot belonged to her sister, Lizzie Smith, by virtue of the deed just mentioned. On this subject the court of chancery appeals finds as follows:

"Some years ago, and before this litigation arose, cer- tain parties made a deed to the house, and lot in question to Mrs. Mary Ann Smith, the mother of the defendants, conveying to her the property absolutely and in fee simple. Under the terms and limitations of the trust . . . the deed to it should have been made to Mary Ann Smith for life, with remainder to her chil- dren. It appears that, although the deed to Mrs. Smith was of the character stated, she and her children always regarded the property as belonging to the former only for life, with remainder in fee to the latter. Under this arrangement it appears that the daughter M. Alice Smith acquired a three-eighths undivided interest in re- mainder in the house and lot and her sister, Lizzie Smith, an undivided five-eighths interest therein. It appears that in this situation M. Alice Smith, her sister, Lizzie Smith, and her mother, Mary Ann Smith (the last named suing by M. Alice Smith as next friend), De-

cember 20, 1901, filed a bill in the chancery court of
Giles county against Buckner Smith and J. D. Latimer
and wife. Buckner Smith was the father of defendants
and the husband of Mary Ann Smith, and the wife of
Latimer was a sister of appellants.

"The object of that bill was to reform the deed to the
house and lot to Mary Ann Smith so as to limit her
estate therein to a life estate, to show that three of the
children of Mary Ann Smith and husband, Buckner
Smith, had died intestate and without issue, and that
as the property then stood M. Alice Smith owned a
three-eighths interest in remainder, and Lizzie Smith a
five-eighths undivided interest therein. . . . Decem-
ber 24, 1901, four days after the above bill was filed, M.
Alice Smith conveyed by deed absolute her three-eighths
interest in remainder in the house and lot in question
to her sister, Lizzie, for the consideration recited of $800
to her in hand paid. This deed was noted for registra-
tion December 27, and registered December 30, 1901.
The decree in the case of *M. Alice Smith et al.* v. *Buckner
Smith et al.*, just referred to, was rendered March 1,
1902. On the testimony of M. Alice Smith and her sis-
ter, Lizzie, their mother being a party complainant by
next friend to the bill, the decree in the case limited the
estate of the mother in the house and lot to a life estate,
and adjudged that the father, Buckner Smith, had no
interest in the property, and that Lizzie Smith by virtue
of the conveyance to her of M. Alice Smith owned all
the remainder interest in the property."

Now, the court of chancery appeals finds that at the date of said decree vesting title to the three-eighths undivided interest of M. Alice Smith in her sister, Lizzie Smith, the said M. Alice Smith was indebted to the complainants by judgment and *nulla bona* return in the amounts set out in the bill, and that as to such existing creditors said decree was fraudulent and void, and procured for the purpose of hindering, delaying, and defrauding said creditors. It is not held that the whole decree was void, but only that portion of it that undertook to vest the interest in remainder of M. Alice Smith in her sister, Lizzie Smith.

It is not seriously contended that this court would be warranted in going behind the findings of the court of chancery appeals into an original examination of the question whether said decree and conveyance were fraudulent or not. The main assignment of error, however, is that the court of chancery appeals erred in decreeing that the discharge in bankruptcy granted to M. Alice Smith August 5, 1902, was not a complete bar to any further proceedings on the part of complainants in this cause.

This assignment of error is based on the fact that the conveyance of M. Alice Smith to Lizzie Smith was executed December 24, 1901, and recorded in the register's office of Giles county, Tennessee, December 30, 1901 — more than four months prior to the filing of the petition in bankruptcy by M. Alice Smith on May 22, 1902. It is said the petition of A. W. Akers, trustee, was filed

July 24, 1902, and the amended and supplemental bill was filed August 2, 1902, while the bankruptcy proceedings were pending and that the discharge in bankruptcy was granted August 5, 1902, after the filing of the petition and the amended and supplemental bill of Akers, trustee.   It is then said that, although the bankruptcy proceedings were then pending and the complainants filed their claims and proved the same therein, neither they nor the trustee in bankruptcy made any resistance to the discharge, although it was twice deferred in order to give them time to file specifications why the discharge should not be granted; nor do they give any reason why they did not resist the discharge in bankruptcy, nor do they pretend that they did not know that the bankruptcy proceedings were pending, but showed to the contrary by their pleadings and testimony.   The amended and supplemental bill also shows that Akers was appointed trustee on June 9, 1902.

Counsel for appellants rely in support of this position on section 11 of the bankrupt act of 1898 (Act July 1, c. 541, 30 Stat., 549 [U. S. Comp. St., 1901, p. 3426]), which provides that "a suit which is founded upon a claim from which a discharge would be a release, and which is pending against a person at the time of the filing of the petition against him, shall be stayed until after an adjudication or the dismissal of the petition; if such person is adjudged a bankrupt, such action may be further stayed until twelve months after the date of said adjudication, or if within that time such

person applies for a discharge, then until the question of such discharge is determinable."

It is said that the bill filed by complainants April 5, 1902, was stayed under said section until the discharge in bankruptcy of M. Alice Smith; and, the discharge having granted to said M. Alice Smith, the bill in this case should have been dismissed, no legal proceedings having been had impeaching or setting aside said discharge in bankruptcy, and none can now be had.

Counsel also relies on section 1, subsec. 12, of the bankruptcy act (30 Stat., 544 [U. S. Comp. St., 1901, p. 3418]), which provides that "discharge shall mean the release of a bankrupt from all of his debts which are provable in bankruptcy, except such as are excepted by this act." It is said that complainants, being parties to the bankruptcy proceeding, are now estopped and concluded by the discharge granted to M. Alice Smith which released her from all debts owing by her at the time of filing her petition. It is further said that, if fraud existed, it would have prevented the discharge, but the discharge was not resisted or prevented, and the question of fraud is now *res adjudicata*, and complainants are estopped; citing *Morris* v. *Creed*, 11 Heisk., 155; *Hudson* v. *Bigham*, 12 Heisk., 59.

It seems to us that the fallacy underlying this assignment of error is that the property of M. Alice Smith fraudulently conveyed to her sister is exonerated from the payment of the claims of her creditors by her discharge in bankruptcy, simply for the reason that the

fraudulent conveyance was made four months prior to the filing of her petition. In Loveland on Bankruptcy, p. 382, it is said: "All property transferred by the bankrupt in fraud of his creditors vests in the trustee. There is no four month's limitation on this class of transfers." Again, the same author (page 788) says: "The granting of a discharge is in no way dependent upon the settlement of the bankrupt's estate." *Morris* v. *Creed,* 11 Heisk., 155, and *Hudson* v. *Bigham,* 12 Heisk., 58, do not apply in the present instance, since the object of the bills in those cases was to attack a discharge in bankruptcy upon the ground that it had been obtained by fraud. It was held that the State courts were without jurisdiction in the premises, but it will be observed that the proceeding herein does not involve in any way the discharge in bankruptcy granted to M. Alice Smith, nor is it sought to disturb or set aside said discharge. The whole theory of the bill is that the property conveyed by M. Alice Smith to her sister, Lizzie Smith, was an asset that belonged to the creditors, and that, said conveyance being fraudulent, it is in the eye of the law as if no conveyance had ever been made.

But counsel insists that "all of these debts have been discharged, and asks what right has the court to order them paid." And again inquires: "Where will these debts be paid?" And replies: "Not in the bankrupt court, as the referee has finally certified the case to the court and has lost power over it, and this court is the proper place for such payment; not in the State

courts, for they have no jurisdiction. The proposition of complainants is to get the proceeds of the three-eighths interest in the house and lot and apply it to debts from which the bankrupt has been discharged — settled by the discharge."

It appears that under an amendment of the bankrupt law passed in 1903 (Act Feb. 5, 1903, c. 487, sec. 113, 32 Stat., 799 [U. S. Comp. St. Supp., 1905, p. 689]), the bankruptcy court has concurrent jurisdiction with the State courts in setting aside fraudulent conveyances and recovering the assets of the bankrupt. This, however, was not the law at the time Akers intervened in this case, and the State court was then the only tribunal that had jurisdiction in such cases. It is unnecessary for us to decide in what court these assets so recovered will be distributed, but it would seem that having been recovered by the trustee they would be distributed in the bankruptcy court under proper orders of the federal court reopening the case.

The right of the trustee in bankruptcy to intervene in this case for the benefit of creditors is fully conferred by the act of Congress passed July 1, 1898, as follows: "The trustee may avoid any transfer by the bankrupt of his property which any creditor of the bankrupt might have avoided, and may recover the property so transferred, or its value from the person to whom it was transferred unless he was a *bona fide* holder for value prior to the date of the adjudication."

"The trustee is vested not only with the title to the

property, but also with the rights of action of creditors with respect to the property of the bankrupt fraudulently conveyed or incumbered by him, and he may assail in their behalf all of such transfers and incumbrances to the same extent as though the debtor had not been declared a bankrupt."

"And all property transferred by the bankrupt in fraud of his creditors vests in the trustee, and there is no four months' limitation on this class of transfers." Section 70 and subsections; Collier on Bankruptcy, 555; Loveland on Bankruptcy, 382. It has been frequently adjudicated that the trustee in bankruptcy is the proper party to bring suit to recover property fraudulently transferred by the bankrupt. *Glenny* v. *Langdon,* 98 U. S., 20, 25 L. Ed., 43; *Trimble* v. *Woodhead,* 102 U. S., 647, 26 L. Ed., 290.

In *Barton* v. *Geiler,* 3 Lea, 297, it was said: "There does not seem to be any sound reason why the agency of the State courts should not be used in the collection of the assets of the bankrupt for the purpose of aiding the federal courts' administration and distribution of the bankrupt's estate. They assume no jurisdiction under the bankrupt act in so doing, but simply exercise their ordinary jurisdiction in suits between parties." "We are of opinion, therefore," said the court, "that an assignee in bankruptcy may sue in the State courts to recover the assets of the bankrupt, and that such suit in no way affects or interferes with the jurisdiction

of the federal courts in cases of bankruptcy." *Claflin* v. *Houseman, Assignee,* 93 U. S., 131, 23 L. Ed., 833.

The fourth and fifth assignments of error are that the court of chancery appeals erred in affirming the decree of the chancellor and declining to dismiss the petition of Akers, trustee, to revive, and in reviving, the case in the name of Akers, trustee. On this subject the court of chancery appeals finds as follows: "Now it appears that the referee in the bankruptcy court, acting upon the theory that the administration of the estate of Miss Smith had been closed, so ordered and discharged the trustee. This was done while this case was pending in the supreme court on the first appeal, and upon the remandment of the case, and a presentation of the facts by the trustee to the referee of his ignorance of the fact that he had been discharged, the referee revoked his discharge of the trustee and reappointed him trustee. Now, the substance of the assignment of error is that the referee, having discharged the trustee, had no power or authority to reappoint him; the bankrupt himself having been given a final discharge." A conclusive answer to these assignments is that the referee, under the bankrupt act of 1898, has the right to reinstate or reappoint a trustee inadvertently or improperly discharged. Section 2, subsec. 8, of the act (30 Stat., 545 [U. S. Comp. St., 1901, p. 3420]). It appears, moreover, that the appellants on the 8th of December, 1904, filed a bill in the federal court at Nashville to enjoin Akers, trustee, from further prosecuting this case. In that bill the question

was especially raised that, the trustee having been discharged by the referee, the referee had no authority to reinstate him. A demurrer was interposed to that bill, assigning, among others, the following grounds:

The second ground is as follows: "The bill shows on its face that prior to filing the same a court of equity, to wit, the chancery court of Giles county, Tennessee, had already taken jurisdiction of all the matters set forth in complainant's bill, and that said court is a court of competent jurisdiction."

The fourth is: "The bill shows on its face that the questions involved pertain to the bankruptcy of M. Alice Smith, which proceedings were instituted prior to the amendment of the bankrupt law of February, 1903, and that therefore this court has no jurisdiction of the matters in said bill set forth."

These grounds of demurrer were sustained by the federal judge, and the bill dismissed, with costs. It appears there was no appeal from that decree. We think for all these reasons there was no error in the action of the court of chancery appeals in holding that said cause was properly revived in the court below by Akers, trustee.

The eighteenth assignment is that the court of chancery appeals erred in decreeing that the total proceeds of sale of the three-eighths interest in the house and lot described in the pleadings should be turned over to the trustee in bankruptcy. It is insisted that only a sufficient amount of said recovery as will satisfy the orig-

inal claims should be turned over to the trustee. We think there is no error in this holding, since the intervention of the trustee was for the benefit of all of the creditors of the estate, and not simply for those whose names appeared in the original proceeding.

The nineteenth assignment of error is that the court of chancery appeals erred in declining to order the costs of the case paid out of the proceeds of the sale of the three-eighths interest in the house and lot described in the pleadings and in decreeing that the defendants and surety on their appeal bond were personally liable for the costs of the cause.

We are unable, however, to perceive any ground for taxing any part of the costs against the complainants, since the fraud of M. Alice Smith, participated in by Lizzie Smith, necessitated the filing of the bill.

The decree of the chancellor and the court of chancery appeals will be affirmed.