### TRIMBLE *v.* WOODHEAD.

*Glenny* v. *Langdon* (98 U. S. 20) reaffirmed.

APPEAL from the Circuit Court of the United States for the District of Kentucky.

The facts are stated in the opinion of the court.

*Mr. John G. Carlisle* for the appellant.

*Mr. Stanley Matthews* and *Mr. William M. Ramsey, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

The appellant, James S. Trimble, who was complainant below, brought his bill in chancery, which was dismissed on final hearing upon it, the answer, replication, and proofs.

Its substance is that Joshua Woodhead was largely indebted to the complainant for government bonds and money loaned, and that the judgment which had been rendered against him therefor proved unavailing; that Ann Woodhead, his wife, held the legal title to certain valuable lands, which were pur-chased with his money, and conveyed to her with intent to defraud his creditors; and that valuable improvements had been placed on the lands, the payment for which was made with his money. It prayed that the lands be subjected to sale for the payment of the judgment.

The answer of Ann denied all this, and also set up as a bar to the relief prayed a former suit in one of the State courts concerning the same subject between the same parties. The record of the proceedings in the State court is set out in full, and much evidence on both sides as to the main allegation of fraud alleged in the bill in the present suit is found in the record, all of which, in the view we take of the case, is immaterial.

The defendant, Joshua, answered "that long before the bringing of this suit this defendant had filed his petition in this honorable court under the bankrupt law of the United States, and the said orator, the said James S. Trimble, was duly notified of the same, and the claim of the said orator was therein set forth, and after the proper proceedings as pre-scribed in said law, this defendant was on his petition adjudged a bankrupt, and by a judgment of this court he was finally discharged from all of his indebtedness, and the claim of the orator was one of the debts from which he was thus discharged; he files herewith a copy of his judgment of discharge as part hereof."

The proceedings in bankruptcy are not set forth in this record, nor have we been able to find in it a copy of Woodhead's discharge; but his answer is sworn to. The complainant also filed an amended bill, making John T. Levis, the alleged assignee in bankruptcy of Joshua, a defendant, and he says that the judgment in the State court was rendered in his favor after Joshua's discharge as a bankrupt.

It may, therefore, be accepted as established by the pleadings that Woodhead was regularly discharged of all his debts

by proceedings in bankruptcy, and that in those proceedings John T. Levis was made the assignee with the usual effect of such an appointment.

It is as well to observe here that while the amended bill of the complainant made Levis a defendant in his character of assignee, and the record shows an order of court for process to issue, no writ, nor any other notice to him, nor the entry of his appearance in person or by attorney, is found in the record. As to him, therefore, and the rights which he represented, the bill is of no effect.

The case of *Glenny* v. *Langdon* (98 U. S. 20) conclusively establishes the proposition that the rights asserted in this bill passed to the assignee in bankruptcy, and that a creditor of Woodhead cannot·assert them in his own name.

In that case the complainant sought to avoid this difficulty by alleging that he had requested the assignee to bring suit or assert the right in some other way, who had refused to do so. That made a stronger case than the present one, where no such application was made. The abortive effort to make the assignee a party without the service of process or an appearance for him does not help the case.

Nor can we attach much importance to the allegation in the amended bill, that two years had elapsed without suit by the assignee; for he might not have discovered the fraud, or if brought judicially into court might have asserted his right not only against the complainant but against Mrs. Woodhead, for the benefit of all her husband's creditors.

We do not see on what principle the failure of the assignee to sue within two years transfers his right of action to the complainant.

The right was certainly in the assignee, and, if barred by the Statute of Limitations, would, if it had any effect on the title, make good the title of defendant. *Meeks* v. *Olpherts*, 100 U. S. 564. It seems to be well settled that, in regard to real estate, the undisturbed possession of the wrong-doer for the time necessary to bar the action vests of itself a good title in the party holding such possession.

It would be a curious application of this principle in the present case, which concerns real estate, to hold that this same

lapse of time, instead of making good the defendant's title, or acting as a bar to the right to bring suit, transfers that right to another unimpaired by the lapse of time.

Nor is the creditor of a bankrupt without remedy in such a case as the present. If he is aware of the existence of property or credits, which should rightfully go to the assignee for the benefit of the creditors, he should inform the assignee of all he knows on the subject, and request him to proceed, by suit if necessary, to recover it. If he declines, a petition to the court of original jurisdiction would, if a proper case was made, compel the assignee to proceed. *Glenny* v. *Langdon, supra.* Indeed, the whole question is so fully considered in that case that little more need be said.

We may, however, suggest consequences readily to be seen if any other doctrine were held.

The primary object of the bankrupt law is to secure the equal distribution of the property of the bankrupt of every kind among his creditors. This can only be done through the rights vested in the assignee and by the faithful discharge of his duties. Let us suppose, however, that a creditor is aware of the existence of property of the bankrupt sufficient to satisfy his own debt, which has not come to the possession or knowledge of the assignee. He has but to keep silence for two years, and then bring suit in his own name against the fraudulent holder of this property, and make his debt really at the expense of the other creditors; or he may have an understanding with the bankrupt, who, after two years, and after his own discharge from all his debts, may confess judgment to this creditor and furnish him the evidence to prove the fraud, and thus secure him a preference forbidden by the act itself.

In the present case, if any right exists to subject this property in the hands of Ann Woodhead to the payment of the debts of her husband, which existed prior to the bankruptcy proceedings, that right is in the assignee, and such right is not divested by anything shown in this case.

The bill of the appellant was, therefore, properly dismissed.

*Decree affirmed.*